UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**OBEL NIEVES,**

        **Plaintiff,**

v.                                                                                          Case No:    6:17-cv-24-Orl-37GJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Obel Nieves (the "Claimant") appeals to the District Court a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Doc. No. 1. Claimant argues that the Administrative Law Judge (the "ALJ") committed reversible error because she: 1) failed to consider all of Claimant's impairments at step two of the sequential evaluation process; and 2) made an Residual Functional Capacity finding that was not supported by substantial evidence. Doc. No. 16 at 8-9, 10-18. Claimant requests that the Commissioner's decision be reversed for an award of benefits or, in the alternative, reversed and remanded for further proceedings. *Id.* at 24. For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED.**

**I.        PROCEDURAL BACKGROUND**

On July 27, 2012, Claimant filed his application for SSI. R. 20. Claimant alleges a disability onset date of May 24, 2012. *Id.* On April 5, 2013, Claimant's application was denied initially. *Id.* On August 27, 2013, Claimant's application was denied upon reconsideration. *Id.* On November 20, 2013, Claimant filed his request for hearing. *Id.* On June 15, 2015, Claimant appeared at a

hearing before the ALJ. R. 38-54. On July 7, 2015, the ALJ issued an unfavorable decision.[1] R. 20-32. On September 8, 2015, Claimant requested review of the ALJ's decision. R. 11-13. On November 3, 2016, the Appeals Council denied Claimant's request. R. 1-6. On January 6, 2017, Claimant filed this appeal. Doc. No. 1.

## II.     STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357

---

[1] The Social Security regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citing 20 C.F.R. § 404.1520). The ALJ must determine: 1) whether the claimant has engaged in substantial gainful activity; 2) whether the claimant has a severe impairment; 3) whether the severe impairment meets or equals the severity of one of the listed impairments; 4) whether the claimant has the residual functional capacity ("RFC") to perform his or her past relevant work; and 5) whether (considering the claimant's RFC, age, education, and work experience) the claimant could perform other work within the national economy. *Id.*

F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

**III. ANALYSIS**

    **A. Step Two: Severe Impairments**

At step two, the ALJ found that Claimant has the following severe impairments: diabetes with retinopathy/maculopathy, status-post amputation of the right toe; obesity; and depression. R. 22. Claimant argues that the ALJ erred at step two, arguing that the "exclusion of [Claimant's] neuropathy and other problems in both feet, not just the foot with the toe amputation, is not supported by substantial evidence." Doc. No. 16 at 8. The Commissioner argues that the ALJ committed no error because she is not required to identify every severe impairment at step two. *Id.* at 9-10. The undersigned agrees with the Commissioner. The Eleventh Circuit has held that when an ALJ finds that a claimant suffers from at least one severe impairment, "the threshold inquiry at step two … [is] satisfied." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 Fed. Appx. 890, 892 (11th Cir. 2013).[2] The Eleventh Circuit has also held that an ALJ's statement that he or she has considered all of a claimant's symptoms is sufficient to show that the ALJ considered such symptoms and the evidence thereto. *See Tuggerson-Brown v. Comm'r of Soc. Sec,* 572 Fed. Appx. 949, 952 (11th Cir. 2014). Here, the ALJ found that Claimant suffers from three severe impairments and explicitly stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence …" R. 22, 25. Thus, Claimant has already satisfied step two, and any failure in finding other severe impairments is harmless. *Packer*, 542 Fed. Appx. at 892; *Tuggerson-Brown,* 572 Fed.

---

[2] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

Appx. at 952. Based on the foregoing, it is recommended that the Court find no error in the ALJ's analysis at step two.

### B. Step Four: Residual Functional Capacity

At step four, the ALJ found Claimant has the following Residual Functional Capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that [Claimant] has the [RFC] to perform less than the full range of light work …. He should be able to sit at a workstation to perform simple [one to five] step tasks (learned in [thirty] days or less) at least [fifty percent] of the workday; no more than occasional balancing and climbing, but never the climbing of ropes, ladders, or scaffolds; he should avoid: foot controls, work at heights, and work with dangerous machinery; [Claimant] can have occasional interaction with the general public and frequent interaction with coworkers and supervisors.

R. 24. Thus, the ALJ found that Claimant had the RFC to perform less than the full range of light work due to certain exertional and nonexertional limitations, namely Claimant: 1) is able to sit at a workstation for at least fifty percent of the workday to perform simple one to five-step tasks, learned within thirty days or less; 2) can occasionally balance and climb; 3) cannot climb ropes, ladders, or scaffolds; 4) should avoid foot controls, work at heights, and work with dangerous machinery; and 5) can have occasional interaction with the general public and frequent interaction with coworkers and supervisors. *Id.*

#### 1) Claimant's Impairments

Claimant argues that the ALJ failed to: 1) consider the effects of diabetes for both of Claimant's legs; 2) "account for limitations in [Claimant's] vision caused by his diabetic macular edema, including blurred vision as well as flashing and flocks"; and 3) give adequate consideration

to Claimant's obesity in combination with his other impairments, particularly limitations imposed by his two impaired feet and depression. Doc. No. 16 at 13-15 (citing SSR 02-1p).[3]

The Court finds Claimant's arguments unavailing. As noted above, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence …" R. 25. *See also Tuggerson-Brown,* 572 Fed. Appx. at 952; *Davis v. Colvin,* No. 12–J–3314–S, 2013 WL 1909423, at * 2 (N.D. Ala. May 7, 2013) (finding that SSR 02-1p was satisfied because the ALJ stated that "he considered 'the entire record'"). Furthermore, the ALJ made specific findings regarding Claimant's limitations. With regard to Claimant's diabetes, the ALJ considered Claimant's testimony that he suffers from "neuropathy in both feet with pain and stiffness in the legs." R. 25. Furthermore, "because of diabetes and its effects," the ALJ limited Claimant's RFC to, *inter alia*: 1) sitting at a workstation at least fifty percent of the workday; 2) never climbing ropes, ladders, or scaffolds; and 3) avoiding foot controls. R. 24-25. With regard to Claimant's visual limitations, the ALJ found that Claimant has a severe impairment of diabetes with retinopathy. R. 22. The ALJ considered Claimant's testimony that he experiences "blurred vision [and] flashing lights." R. 25.

---

[3] Social Security Ruling 02-1p governs the ALJ's consideration of a claimant's obesity. The regulation states:

> <u>The combined effects of obesity with other impairments may be greater than might be expected without obesity.</u> For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone ….
>
> <u>When we identify obesity as a medically determinable impairment … we will consider any functional limitations resulting from the obesity in the RFC assessment,</u> in addition to any limitations resulting from any other physical or mental impairments that we identify.

SSR 02–1p, 2002 WL 34686281 (Sept. 12, 2002) (emphasis added). Thus, when the ALJ identifies a claimant's obesity as a medically determinable impairment, the ALJ must consider any functional limitations resulting from a claimant's obesity when determining a claimant's RFC. *Id.* Furthermore, the ALJ must consider a claimant's obesity in combination with other impairments. *Id.*

The ALJ also limited Claimant's RFC to less than a full range of light work, noting that "[Claimant] requires light work to reduce pressure to the eyes …" R. 25. The ALJ also considered Claimant's obesity, citing to Social Security Ruling 02-01p and finding an RFC of light work "more than reasonable" due to Claimant's "failure to attribute any work-related functional limitation to [his] obesity, [no] other physical findings which would impose restrictions, and the apparent adequate response to treatment for a lumbar spine disorder …" R. 28.[4] Finally, the ALJ noted that "Claimant's depression affects his concentration," and limited him "to simple tasks with limited socialization to reduce interruptions and distractions from work." R. 25. Based on the foregoing, it is recommended that the Court find no error in the ALJ's consideration of the effects of Claimant's diabetes, visual impairments, obesity, and depression.

### 2) Cause of Claimant's Toe Amputation

The ALJ noted that "Claimant reported a right toe amputation in 2010 due to stepping on a poisonous plant, and not due to diabetes." R. 24. Claimant argues that the ALJ "erroneously understated the effects of Claimant's diabetes," when she found Claimant's right toe amputation was due to stepping on a poisonous plant.[5] Doc. No. 16 at 13. The undersigned finds Claimant's argument unavailing. The Commissioner rightly notes that Claimant "has not demonstrated any additional functional limitations that would result had the reason for the toe amputation been different." *Id.* at 20. *See also Milanes v. Astrue*, No. 3:07-cv-425-J-HTS, 2008 WL 1766937, at *2

---

[4] The ALJ stated that "with a limitation of light exertional work, [Claimant's] obesity, in combination with a lumbar spine disorder, has been considered and accommodated under [Social Security Ruling 02-1p]." R. 28. The undersigned interprets the ALJ's statement as showing that she considered Claimant's obesity in combination with all of Claimant's other impairments, but found a restriction to light work warranted after considering Claimant's obesity in combination with his lumbar spine disorder. *Id.*

[5] In support of his first argument, Claimant cites to a treatment note purportedly showing that Claimant suffered a toe puncture from stepping on a plant in May 2008. Doc. No. 16 at 13 (citing R. 371). Claimant also cites to a treatment note purportedly showing that Claimant's amputation was for a diabetes-related infection of a ruptured blister. *Id.* (citing R. 354).

(M.D. Fla. Apr. 15, 2008) (citing *Scull v. Apfel*, 221 F.3d 1352, No. 99-7106, 2000 WL 1028250, at *1 (10th Cir. 2000) (noting that "disability determinations turn on the functional consequences, not the causes, of a claimant's condition")). Based on the foregoing, it is recommended that the Court find no error in the ALJ's consideration of the causes of Claimant's diabetes.

### 3) Gait and Stance

On December 10, 2014, Claimant visited his treating physician, Dr. Douglas M. Childs. R. 545. In a treatment note for that day, Dr. Childs found that Claimant's gait and stance for his lower extremities were normal. *Id.* At step four, the ALJ considered Claimant's obesity, and cited to Dr. Childs' December 10, 2014 treatment note. R. 28. Claimant argues that "the ALJ erroneously concluded that [Claimant's] gait and stance were normal." Doc. No. 16 at 14. In support of his argument, Claimant cites to an April 1, 2013 Treating Source Orthopedic Questionnaire, in which Dr. Childs noted that Claimant suffers from gait disturbance. *Id.* (citing R. 377).

The ALJ explicitly noted the Treating Source Orthopedic Questionnaire. R. 26 (citing R. 377). Nevertheless, the ALJ cited to the December 10, 2014 treatment note which noted that Claimant's gait and stance were normal. R. 28 (citing R. 545). The ALJ also noted that "[s]ubsequent notes indicate the findings on examination were unchanged and essentially normal." *Id.* The ALJ did not misstate the record when making these findings, her findings are supported by substantial evidence, and the undersigned declines to reweigh the evidence regarding the same. *See Phillips*, 357 F.3d at 1240 n.8. Accordingly, it is recommended that the Court find no error in the ALJ's consideration of Claimant's gait and stance.

### 4) Medication Side Effects

The ALJ found that Claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible. R. 25. In making her credibility finding, the ALJ made the following statement:

> Although [Claimant] has alleged various side effects from the use of medications, the medical records from various treating doctors does not corroborate those allegations and indicate that [Claimant] reported no medication side effects.

R. 29. Thus, the ALJ found Claimant's statements regarding his alleged side effects from medication not credible because such statements were not corroborated by the medical evidence. *Id.* Claimant argues that the ALJ's finding was not supported by substantial evidence. Doc. No. 16 at 14. In support of his argument, Claimant cites to a March 19, 2015 treatment note purportedly indicating that Claimant had allergic reactions to injections treating his vision problems. *Id.* (citing R. 529, 531). Claimant also cites to: 1) medical records showing that he was prescribed Gabapentin for his foot and leg pain; and 2) his testimony stating that Gabapentin causes drowsiness. *Id.* (citing R. 47-48, 385, 394, 404, 433, 435, 546).

The undersigned finds Claimant's arguments unavailing. The March 19, 2015 treatment note does not state that Claimant's allergies were caused by the injections given to treat his vision problems. R. 529-531. Instead, it reflects Claimant's complaints of an allergic response on the inside surface of the eyelid, causing itching, redness, and mucous. R. 531. In *Wilson v. Astrue*, 653 F.Supp.2d 1282, 1296 (M.D. Fla. 2009), the Court found no error in a similar situation:

> <u>To the extent [the claimant] alleges that the dizziness and headaches are side effects of his medication, the undersigned notes that</u> there is medical documentation of [the claimant] occasionally suffering from these problems, but <u>the physicians seeing [the claimant] did not opine that they are caused by his medications.</u> It may be argued that the medications could reasonably be expected to give rise to the symptoms [the claimant] claims, but <u>there is no record evidence of</u>

> this occurring. Accordingly, [the claimant] has failed to meet his burden of "producing evidence in support of his claim." *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir.2003) (citing 20 C.F.R. § 416.912(a); 20 C.F.R. § 416.912(c)).

*Id.* (emphasis added). Thus, because there was no record medical evidence showing that the claimant's side effects were caused by his medication, the Court found that the claimant failed to meet his burden of producing evidence in support of his claim. *Id.* The undersigned finds *Wilson* persuasive, and finds that Claimant has failed to meet his burden of showing that his allergies were caused by injections given to treat his vision problems.

With regard to Claimant's side effects from Gabapentin, the ALJ considered Claimant's allegations of such side effects and found that the medical evidence does not corroborate his allegations. R. 29. The ALJ also cited to treatment notes in which Claimant reports having no problem with his regular medications, which included Gabapentin. R. 383, 392, 398, 551, 557, 562. Thus, the ALJ did not misstate the record when making these findings, there is substantial evidence supporting such findings, and the undersigned declines to reweigh the evidence regarding the same. Accordingly, it is recommended that the Court find no error in the ALJ's consideration of Claimant's side effects from his medications.

### 5) Non-Compliance with Treatment

The ALJ found that Claimant's allegations concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible. R. 25. In making such determination, the ALJ found that Claimant has not been entirely compliant in taking prescribed medications. R. 29. In support, the ALJ cites to: 1) records showing a history of insulin dependent diabetes, poorly controlled with non-compliance; 2) Claimant's discharge from Dr. Childs' treatment due to non-compliance; and 3) treatment notes showing elevated blood sugar levels due to Claimant's running

...

out of medication for weeks at a time. R. 29. Claimant argues that the ALJ erred by failing to consider Claimant's inability to pay for medications and doctor's visits. Doc. No. 16 at 16.

In *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003), the Eleventh Circuit held:

> We have held that "refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability," and "poverty excuses noncompliance." *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). Additionally, <u>when an ALJ relies on noncompliance as the sole ground for the denial of disability benefits, and the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ is required to determine whether the claimant was able to afford the prescribed treatment.</u> *See id*. at 1214.

*Id.* (emphasis added). Thus, if: 1) the ALJ relies on non-compliance as the sole ground for the denial of disability benefits; and 2) the record contains evidence showing that the claimant is financially unable to comply with prescribed treatment, the ALJ must determine whether a claimant is able to afford such treatment. *Id.* Here, Claimant's non-compliance with treatment was not the sole ground for the ALJ's decision. The ALJ also considered, *inter alia*, Claimant's work history and activities of daily living. R. 29. Claimant never contested those findings. Based on the foregoing, it is recommended that the Court find no error in the ALJ's consideration of Claimant's non-compliance with treatment.

## IV. CONCLUSION

For the reasons stated above, it is **RECOMMENDED** that the Court:

 1. **AFFIRM** the final decision of the Commissioner; and

 2. **DIRECT** the Clerk to award judgment to the Commissioner and to close the case.

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on September 6, 2017.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy